**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

_____

**PREMIUM PAYMENT PLAN,**

                    **Plaintiff,**

   **v.**                                 **1:02-CV-502**
                                        **(GLS)**

**STATE NATIONAL INSURANCE**
**COMPANY, INC.,**

                    **Defendant.**

_____

**APPEARANCES:**            **OF COUNSEL:**

**FOR THE PLAINTIFF:**

Carlucci, Legum Law Firm        STEVEN G. LEGUM, ESQ.
170 Old County Road
Mineola, New York 11501-4307

**FOR THE DEFENDANT:**

Marks, O'Neill, O' Brien        JAMES M. SKELLY, ESQ.
& Courtney, P.C.
530 Saw Mill River Road
Elmsford, New York 10523

**Gary L. Sharpe**
**U.S. District Judge**

## MEMORANDUM-DECISION AND ORDER

### I. Introduction

Premium Payment Plan ("PPP") is a New York partnership authorized

to finance insurance premiums, and State National Insurance Company,

Inc. ("State National") is a Texas corporate insurer.  In this diversity action,

PPP seeks reimbursement of $105,157.84 in unearned premiums resulting

from State National's cancellation of five insurance policies.

After District Court Judge Thomas J. McAvoy denied summary

judgment, this court conducted a bench trial, and granted the parties'

request to submit further briefing.  Having reviewed the relevant law, the

post-trial submissions, the trial exhibits, and having resolved credibility

issues, the court enters judgement for State National.

## II. <u>Facts</u>

As an agent of those seeking insurance, a retail broker routinely

negotiates coverage with carriers.  If agreement is reached, a binder is

issued.  If insureds wish to finance annual premiums, they, or the broker on

their behalf, applies to a company such as PPP.  When the insurer issues

the policy, PPP pays the entire annual premium.  If the policy is cancelled

before the coverage period expires, New York and Maryland law require

that the insurer reimburse the excess annual payment, or unearned

premium.  At issue are the unearned premiums from five policies financed

by PPP and cancelled by State National.[1]

From October - November, 2001, insurance binders with State National were issued on behalf of five companies by their agent, National Insurance Services ("NIS") whose principal was Murray Slattery.  Slattery was an independent, retail Maryland broker.  On behalf of Roth Realty and four others, Slattery submitted finance applications to PPP.  PPP agreed to finance the annual premiums, and sent the money to Slattery by electronic transfer.

Delaware Valley Underwriting Agency ("DVUA") is a wholesale broker and managing general agent that distributes insurance products to retail brokers on behalf of insurance companies.  DVUA was a managing general agent for State National, and was authorized to issue policies on its behalf.  Although DVUA was an authorized agent of State National, PPP, NIS and Slattery were not.

Beginning with Roth, the five policies were placed by Slattery with State National through DVUA as managing agent.  DVUA subsequently received a notice of PPP's premium financing on the Roth account.

---

[1]PPP originally sought unearned premiums from eight policies, but only five are now the subject of controversy. *See Pl.'s Post Tr. Mem.* p. 3 fn. 4*, Dkt. No.* 46*.*

Because PPP had paid the premiums to NIS and Slattery, DVUA sent a

November 7, 2001, letter informing PPP that all payments should be made

directly to them.  The letter provided that if DVUA was not paid directly, it

could not guarantee the return of unearned premiums or other funds.[2]  *See*

*Def's Tr. Ex.* A., *Dkt. No.* 44, *see also Tr.* p. 89-90.  The court credits PPP's

assertion that on earlier occasions and through retail brokers other than

Slattery, it financed State National premiums without incident by

transmitting payment through the brokers to State National.

Without warning and without fault attributable to either PPP or State

National, problems surfaced by January 2002.  Murray Slattery was a thief.

He stole PPP's money and never forwarded it to DVUA or State National.

Naturally, the underlying insurance policies were cancelled, thus

generating -at least on paper - unearned premiums.

## III.  Discussion

PPP asserts that Slattery was the agent of DVUA and State National,

and State National must therefore compensate it for the unearned

---

[2]In bold-face type, the letter specifically stated:  "Please note, unless the premium finance check is made to Delaware Valley Underwriting Agency, Inc., we are not responsible for any return premium to you should this policy be canceled or terminated."

premiums.[3]  State National counters that Slattery was not its agent.

Accordingly, the court must look to the law of agency, and decide which of

two innocent parties suffers the loss caused by the miscreant, Slattery.

New York's agency law distinguishes between actual and apparent

authority.[4]  "Actual authority is the power of the agent to do an act or to

conduct a transaction on account of the principal, he is privileged to do

because of the principal's manifestations to him." *Dinaco, Inc. v. Time

Warner, Inc.*, 346 F.3d 64, 68 (2d Cir. 2003) (internal citations and

quotations omitted).  "Such authority ... exists only where the *agent* may

reasonably infer from the *words* or *conduct* of the *principal* that the principal

has consented to the agent's performance of a particular act."  *Id.* (internal

citation omitted and emphasis in the original).  On the other hand,

"apparent authority arises from the written or spoken words or any other

conduct of the principal which, reasonably interpreted, causes a third

---

[3]Apparently concerned by the trial testimony, PPP now argues that Slattery had actual authority to act on State National's behalf.  That argument contradicts PPP's consistent position since the onset of this litigation; namely, that Slattery had apparent, not actual authority.  Nonetheless, the court entertains the argument.

[4]In their trial and post-trial submissions, the parties did not address whether the law of New York or Maryland applies.  As Judge McAvoy noted in his summary judgment decision, however, there are no significant differences between the two.  *See McAvoy Decision at 10, Dkt. No. 26.*

person to believe that the principal consents to have an act done on his

behalf by the person purporting to act for him." *Id.* at 69 (internal citation

and quotation omitted).  Thus, actual authority focuses on the relationship

of the principal and agent, not on the perceptions that others may have of

that relationship.  *See Itel Containers Int'l Corp. v. Atlantrafik Express Serv.*

*Ltd.*, 909 F.2d 698, 702 (2d Cir. 1990).  Apparent authority, however,

focuses on the principal's conduct from a third party's perspective, and

whether that conduct reasonably gives the appearance that an agent is

authorized to act.  *See Reiss v. Societe Centrale Du Groupe Des*

*Assurances Nationales*, 235 F.3d 738, 748 (2d Cir. 2000).

Slattery had no actual authority to act on State National's behalf, and

PPP's perceptions in that regard are irrelevant.  *Itel Containers Int'l Corp.*,

909 F.2d at 702.  The trial evidence unequivocally reflects that DVUA was

State National's agent, and neither it nor State National ever controlled

Slattery, ever authorized him to act on their behalf, or ever said or did

anything that would have communicated to *Slattery* that he was their agent.

Absent a specific agreement to the contrary, PPP concedes that a retail

broker is the actual agent of the insured, not the insurer.  Furthermore, it

readily admits that it understood the industry distinction between a retail

6

broker who had no authority to bind the insurer, and a managing general agent such as DVUA which possessed such authority.  Accordingly, Slattery was not State National's actual agent.

The remaining question is whether State National or DVUA did anything from PPP's perspective that would have caused PPP to reasonably conclude that Slattery was State National's apparent agent. PPP argues that standard industry practice permitted insurance companies to accept finance premiums transmitted through brokers, and that State National did so on earlier occasions when PPP transmitted premiums through brokers other than Slattery.  While the court does not doubt that standard industry practice is to accept money regardless of its source, that practice alone does not alter industry recognition of the basic difference between a retail broker and general managing agent.  Furthermore, PPP failed to prove that any of the prior policies were placed through DVUA as opposed to some other general managing agent.  So too, PPP admitted that when told to do so, it routinely forwards premium payments to the general managing agent, not the retail broker.  In that regard, PPP's financing notice on the first Roth account was dated October 30, 2001, and by November 7, DVUA sent a letter in large bold-face type stating that it

7

would not be responsible for unearned premiums unless it received the

money directly.  PPP concedes that it received the letter, but only after the

subject accounts were funded.[5]

Given PPP's recognition of the industry distinctions between a retail

broker and general managing agent, it has failed to prove any reasonable

basis for its conclusion that State National or DVUA apparently authorized

Slattery to accept money.  This conclusion is buttressed by DVUA's letter

disclaiming such authority, and apprizing PPP of the consequences if it

ignored the warning.

Accordingly, Slattery had no actual or apparent authority to act on

State National's behalf, and State National has no obligation to return

unearned premiums it never received.

**WHEREFORE**, it is hereby

**ORDERED** that judgement is entered in favor of State National and

the case closed; and it is further

**ORDERED** that the Clerk of the Court serve a copy of this Order

upon the parties.

---

[5]The court has reviewed the trial exhibits, and it appears that some of the accounts were funded subsequent to the date of the first letter.  While the notice is relevant, the critical factor is PPP's unreasonable belief that Slattery was State National's agent.

8

Dated:      March 7, 2006
             Albany, New York

Gary L. Sharpe
U.S. District Judge

9